**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

RALPH B. MACKEY,

      Plaintiff,

vs.                                 CASE NO. 3:08-cv-1019-J-TEM

MICHAEL ASTRUE,
Commissioner of Social Security,

      Defendant.
_____

**<u>ORDER AND OPINION</u>**

This matter is before the Court on Plaintiff's complaint (Doc. #1), which seeks

review of the final decision of the Commissioner of Social Security (the Commissioner) that

denied Plaintiff's requests for waivers of repayment of alleged overpayments of disability

insurance benefits (DIB).  Plaintiff proceeded in the underlying administrative phase of this

case on a *pro se* basis and continues to pursue this matter without benefit of legal counsel.

Therefore, Plaintiff's pleading and other filings with this Court have been afforded liberal

construction in accordance with prevailing precedent.  *Hughes v. Rowe*, 449 U.S. 5, 9

(1980) (complaints of *pro se* litigants must be construed more liberally than formal

pleadings drafted by lawyers).  Plaintiff has filed a number of documents in this case, the

totality of which have been construed as Plaintiff's brief in opposition to the

Commissioner's decision (*see, e.g.*, Doc. #1, Complaint; Doc. #10, Plaintiff's New

Evidence; Doc. #24, Plaintiff's Compliance with Scheduling Order).  Defendant filed his

legal brief in support of the decision finding an overpayment of disability benefits and

denying Plaintiff's requests for waivers of repayment (Doc. #29, Memorandum in Support

of the Commissioner's Decision).[1]   Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference dated September 25, 2009 (Doc. #22).   The Commissioner has filed the transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number).

The Court has considered the record in its entirety.   For the reasons stated below, the Commissioner's decision is **REVERSED** and this case is remanded for further proceedings.

## I. Factual Background

On August 30, 1993, a Notice of Award was issued to Plaintiff stating that he had been found eligible for disability benefits beginning September 1993 and eligible for Medicare beginning March 1993 (Tr. 94-97).   On February 8, 1994, the Social Security Administration (SSA) sent Plaintiff a letter notifying him that his entitlement to benefits was scheduled for review in June 1994, since it appeared his ninth (9th) month of trial work would end at that time (Tr. 103-04).[2]   On June 30, 1994, Plaintiff completed and returned

---

[1]Hereafter the Court will refer to Defendant's Memorandum (Doc. #29) as "D's Brief."

[2]There is no evidence in the record prior to the August 1993 award letter, or between  that letter and the February 1994 letter concerning the June 1994 review.
A "trial work period" is provided in 20 C.F.R. § 404.1592(a). "During the trial work period, a person may perform services in as many as nine months, and those months need not be consecutive.  The SSA will not consider those services as showing that a disability has ended until those services were performed for at least nine months. However, after the trial work period has ended, the SSA will consider the work performed during the trial work period when determining whether the disability ended **at any time after the trial work period**." *Martinez v. Comm'r of Social Security*, 132 Fed.Appx. 310, 2005 WL 1220643, *3 (11th Cir. May 24, 2005) (emphasis added) (internal citations omitted).

a Report of Work Activity–Continuing Disability (Tr. 98-102).[3]  Plaintiff advised that he started working for Amway Distributors on October 1, 1993 and he worked approximately two and one-half hours per day for six days a week selling a "few products occasionally" (Tr. 98-99).   On July 23, 1994, the SSA sent Plaintiff a letter advising it had "recently reviewed" the evidence in his Social Security disability claim and found his disability was continuing (Tr. 105).  The July letter advised Plaintiff his claim would be reviewed from time to time.  *Id.*  Both the February and July letters advised Plaintiff to "report any changes that may affect" his benefits and to let the SSA know if he returned to work (Tr. 104, 106).

The next chronological entry in the record is an earnings statement under Plaintiff's Social Security number that shows a run date of June 14, 1996 and reports earnings from 1992, 1993, 1994 and 1995 (Tr. 115).  The 1995 earnings from Frank William Mackey Masonry totaled $6,510.  On June 19, 1996, Plaintiff's employer completed and returned two forms that reported wages Plaintiff earned in September 1994 and from August 1995 through May 1996 (Tr. 116-17).[4]  On June 27, 1996, Plaintiff completed a Work Activity Report–Employee on which he reported all work activity from April 1993 through the present time (Tr. 110-12).  On the Work Activity Report, Plaintiff candidly noted he worked five to eight hours per day on four to six days per week at a rate of $10 per hour for

---

[3]It is unclear to the undersigned as to why the name identified on the top of the form as the disabled person is "Diana L. Richards," which is apparently associated with Plaintiff's Social Security number (*see* Tr. 98).

[4]The reporting employer is Frank William Mackey Masonry, which is a company owned by Plaintiff's brother (*see* Tr. 79).  Plaintiff's brother wrote a letter dated August 12, 2005, advising "to whom it may concern" that he employed his brother during the years 1996 through 1999, regardless of lack of productivity or attendance, in order to help his brother and his brother's family.  *Id.*

Mackey Masonry and reported he had earned more than $75 per month during the month of September 1994 and then from August 1995 through June 1996.[5]  On June 29, 1996, the SSA sent a letter to Plaintiff advising it had information he no longer qualified for disability benefits because he began doing substantial gainful work in June 1996, and he would no longer be entitled to benefit checks after August 1996 (Tr. 107).  This letter also advised Plaintiff the months September 1995 through May 1996 made up his trial work period, and that the law allows a thirty-six month extended period of eligibility during which "Medicare coverage can continue, and benefits can be started again without a new application if substantial gainful work stops" (Tr. 107-08).  Noting that Plaintiff's extended period of eligibility had not yet ended, the letter stated, "*If you are entitled to Medicare that coverage will continue*" (Tr. 108) (emphasis added).[6]  Also, on June 29, 1996, the SSA sent a letter to Plaintiff's wife advising evidence showed Plaintiff had the ability to engage in substantial gainful activity and benefits on his record would have to be stopped (Tr. 118).  Plaintiff and his wife were given ten (10) days to present additional evidence before a "formal determination" would be made based on the current evidence (Tr. 108, 118).[7]

---

[5]The Court does take note that Plaintiff indicated greater than $75 earnings for months February, March, April, May and June 1997, which were months that had yet to occur.  Accordingly, the Court finds Plaintiff mistakenly recorded 1997 when, in all probability, he meant 1996.

[6]Interestingly, in February 1997, the Office of Disability and International Operations for Medicare Information sent Plaintiff a Medical Insurance Premium Notice advising his premium was not paid and his last day of medical insurance coverage was January 31, 1997 (Tr. 127).  On March 21, 1997, Plaintiff sent a letter to the Office of Disability and International Operations requesting his coverage be reinstated, claiming, "I need continued medical assistance to maintain my kidney transplant" (Tr. 126).

[7]The record additionally contains a copy of a SSA letter that is hand dated June 29, 1996, and requests Plaintiff complete the enclosed forms, which included a Report of

Thereafter, on July 15, 1996, the SSA sent Plaintiff a letter stating:

The law provides that an individual will receive benefit payments for the month disability ends and the following 2 months.  Not until a person has performed services in at least 9 months is a decision made as to whether the person has become able to do substantial gainful work.  The evidence in your case shows that you have performed services in at least 9 months and you are able to do substantial gainful work as of June 1996.  Accordingly, the last disability payment to which you are entitled is for the month of August 1996.

(Tr. 119.)  The same letter advises, "You will be notified later if we owe you any back benefits or you are overpaid any benefits" and sets forth Plaintiff's right to appeal the decision within 60 days after the day he receives the letter (Tr. 120).

A little more than two months later, on September 25, 1996, the SSA sent Plaintiff a Notice of Change in Benefits stating the last benefits payment he would receive would be the one dated on or about September 3, 1996, because he had returned to work (*see* Doc. #10 at 12),[8] and a letter also stating Plaintiff's benefits would stop because the SSA had decided his health had improved since his case was last reviewed (Tr. 121-23). Confusingly, this latter letter stated, "You are no longer disabled as of 9/96.  You will get checks for that month and the next two months.  Your last check will be for 11/96." (Tr. 121.)   Provisions for a sixty day appeal period were noted in the letter. *Id.*

Plaintiff testified his disability benefits ceased in December 1996 (Tr. 190, 193). There is no contrary evidence in the record.

---

Continuing Disability Interview (SSA-454), a Medical Release Authorization (SSA-827), and a Work Activity Report (SSA-821) (Tr. 114).

[8]This Notice of Change in Benefits is not contained within the administrative record compiled by the Commissioner.  The Notice is, however, filed in the Court record of this case as an exhibit submitted by Plaintiff in support of his position.

Plaintiff has submitted bank statements which illustrate there were no electronic deposits of disability payments into his bank account from October 1, 1997 through May 13, 1998 (Tr. 81-92).  On May 14, 1998, an electronic direct deposit of $14,051.70 from the U.S. Treasury was made into Plaintiff's bank account of record (Tr. 89).  Plaintiff's testimony corroborates this deposit (Tr. 194).  On June 3, 1998, an electronic deposit of $896 from the U.S. Treasury  was made into Plaintiff's bank account of record (Tr. 89). Fourteen months later, on July 15, 1999, the SSA issued a billing statement to Plaintiff for $29,364.60 concerning "an overpayment of Social Security benefits paid in error to Ralph B. Mackey, A; Billie J. Mackey, B2; Lisa M. Mackey, C1; and William S. Morrison, C2" (emphasis omitted) (Tr. 80).[9]  There is no evidence in the record to explain the calculation of the asserted overpayment amount.

On April 27, 2000, Plaintiff's wife submitted a completed Request for Waiver of Overpayment Recovery or Change in Repayment Rate form (SSA-632-BK) to Social Security (Tr. 17-24).  It appears this form was submitted on behalf of Plaintiff and his dependants who had received disability benefit payments.  In response to the question, "Why did you think you were due the overpaid money and why do you think you were not at fault in causing the overpayment or accepting the money?" Mrs. Mackey stated that "award letters were sent" and she enclosed copies (Tr. 18).  Also, Mrs. Mackey clearly marked the provided box on the form that indicates the "overpayment" was not her, or presumably Plaintiff's, fault and she could not afford to repay any funds (Tr. 17).

─────────────────

[9]This document was entered into the record by Plaintiff during the course of the administrative hearing on August 15, 2005 (*see* Tr. 212), not the Social Security Administration.  The second page of the referenced billing statement is missing from the record.

On October 30, 2000, there was a Report of Contact completed by someone in the SSA's district office, who remarked "we cannot find the W/E to be without fault in causing the overpayment since he returned to work above SGA levels and failed to notify Social Security" (Tr. 25).[10]   The report of contact includes notes that state, "Mr. Mackey completed an SSA-3945 in [sic] 6/30/94 and received a notice dated 7/23/94 explaining about periodic reviews but also giving information about the trial work period and reporting responsibilities.  Therefore, Mr. Mackey knew or should have known his work would effect his entitlement to benefits and without fault cannot be established."  *Id.*[11]  The July 23, 1994 notice to which the writer refers is the letter discussed earlier in this section that advised Plaintiff his claim had been reviewed and his disability was found to be continuing (Tr. 105-06).

The SSA sent letters to Plaintiff and his wife in January 2001, which advised the requested waivers were denied and scheduled a personal conference for them to review the case with the SSA decision maker before a final waiver determination would be made (Tr. 26-32).  Plaintiff and Mrs. Mackey failed to attend the personal conference (Tr. 42-43).  On March 10, 2001, Social Security issued Waiver Determinations (on Form SSA-635), stating Plaintiff and Mrs. Mackey were not without fault in the asserted overpayment and the "money paid to the W/E ***in 1998*** was in error and the W/E should have known this or

---

[10]The Court presumes "W/E" is an abbreviation for wage earner in reference to the claimant.  Although "W/E" appears several times throughout the administrative record, there is also an abbreviation "HA" used periodically, which appears to also refer to the claimant.  Try as it might, the Court is unable to decipher for what "HA" may stand.

[11]Curiously, the person completing the Report of Contact failed to mention the Work Activity Report the Plaintiff completed and returned to the SSA more than four years earlier (*compare* Tr. 25 *with* Tr. 110-12).

at least questioned the money" (Tr. 38; *see also* Tr. 39-41) (emphasis added). The hearing officer who issued the waiver determinations also noted, "HA's expenses exceed his income, although recovery would defeat the purpose of Title II the W/E is at fault and repayment is required" (Tr. 38).

On May 22, 2002, Plaintiff completed a new application for disability insurance benefits (Tr. 45-47), which were subsequently awarded on August 8, 2004 with an entitlement to benefits beginning November 2002 (Tr. 139-42). On September 15, 2004, the SSA advised Plaintiff it had received his request to (again) review the waiver denials and would not collect the overpayment until it responded to the request (Tr. 143-44). The September 15 letter showed Plaintiff owed a balance of $20,270.60 to the SSA. *Id.* On September 25, 2004, the SSA sent Plaintiff a letter advising, "We used $20,270.60 of your benefits to recover *all of your overpayment*" (Tr. 51)[12] (emphasis added). In November and December of 2004, Plaintiff and/or his wife sent letters seeking a hearing before an administrative law judge (ALJ) and completed the SSA's form entitled "Request for Hearing by Administrative Law Judge," on which they stated they disagreed that $29,000 was an overpayment (*see* Tr. 49-53).

An administrative hearing was held before ALJ David W. Carstetter on August 16, 2005. Plaintiff and his wife appeared without legal representation at the hearing. In summary, Plaintiff and his wife testified at the hearing that an overpayment of disability

---

[12]Here again, evidence that originated with the SSA is contained in the record because it was provided by Plaintiff, not by the Commissioner. This time the SSA letter was submitted as an attachment to Plaintiff's demand for an administrative hearing on the "3rd attempt to appeal an overpayment decision" in which the Social Security Administration had allegedly "stolen over $24,000 in back-owed benefits..." (*see* Tr. 49-53).

benefits did not occur and they produced bank records that reportedly support this assertion (Tr. 186-199; *see also* Tr. 81-92, bank records from October 1997 through June 1998). Plaintiff testified he went back to work in 1996, during which time he was on a "work program" (Tr. 193). Plaintiff testified his benefits ceased in December 1996 and he worked for two years or longer without receipt of any disability benefits (Tr. 193-94). Plaintiff also testified all of his disability payments were made through electronic direct deposits into the same bank account he and his wife have held for twenty years, but there were no deposits into this account from the government in 1997 and 1998, until a lump sum deposit of over $14,000 was made in May 1998 (Tr. 194-99, 205-09). Plaintiff quit working when he received the lump sum and he received an additional five months of disability payments, then he returned to work until he lost his kidneys and went back on disability (Tr. 209), presumably with the 2002 application.

Plaintiff produced evidence at the hearing regarding the withholding of disability benefits due to him from November 2002 through June 2004 (Tr. 199-201, 207, 210; *also see* Tr. 51, 139) to pay off the alleged overpayment.

ALJ Carstetter issued a hearing decision finding the Plaintiff was overpaid $22,626.60, Plaintiff's wife was overpaid $6,738, both parties were at fault in causing the overpayment, the requests for waivers of the overpayment were denied and the SSA was correct in applying the Plaintiff's underpayment of $20,270.60 to reduce the overpayment amount (Tr. 8-16). The Appeals Council denied Plaintiff's request for review (Tr. 3-5). Thus, the hearing decision became the final decision of the Commissioner, subject to review under 42 U.S.C. § 405(g). Plaintiff filed the instant action in federal court on

October 22, 2008 (Doc. #1).

**II. Applicable Law and Standard of Review**

Under Title 42, U.S.C. § 404(a)(1)(A), if the Commissioner determines that more than the correct amount of payment has been made, the Commissioner may seek refund of the excess amount or reduce future payments to recapture the amount.  However, Title 42, U.S.C. § 404(b), additionally provides that no adjustment or recovery shall be made from a person who is "without fault if such adjustment or recovery would defeat the purpose of this chapter *or* would be against equity and good conscience."  *Id.* (emphasis added).

The Commissioner has enacted Regulations for procedures to carry out the intent of the statutory recovery provisions.  Under 20 C.F.R. § 404.902(j) and (k), the SSA shall make initial determinations, subject to administrative and judicial review, of overpayments and underpayments, and whether overpayments should be repaid.[13]  The individual from whom recovery is sought is to be provided notice under 20 C.F.R. § 404.502a of the amount of overpayment and how it occurred, the right to seek waiver, reconsideration of the fact of overpayment or amount determination, and instructions on how to do so.

The Regulations provide that even if the SSA may have been at fault in making an overpayment, that will not excuse repayment unless the person from whom recovery is sought is "without fault."   20 C.F.R. § 404.507.  That section indicates a claimant's fault can be found if it resulted from (a) an incorrect statement to the SSA which the person knew or should have known was incorrect, (b) a failure to furnish information which the person knew or should have known to be material, or (c) acceptance of payment which he

_____

[13]Unless otherwise specified, all references to 20 C.F.R. will be to the 2010 edition.

or she either knew or could have been expected to know was incorrect. *Id.*

If the person is "without fault," the SSA may still recover the overpayment unless recovery "would defeat the purpose" of the Act or "be against equity and good conscience." 20 C.F.R. § 404.506(a).   "Defeat the purpose" is defined as depriving a person of income required for ordinary and necessary living expenses."   20 C.F.R. § 404.508(a).   If the person needs substantially all of his or her current income (including Social Security monthly benefits) to meet current ordinary and necessary living expenses, recovery would defeat the purpose of the Act.   20 C.F.R. § 404.508(b).   Determination of whether an individual is without fault is to be based on subjective criteria, including the person's age, intelligence, education, and physical and mental condition.  20 C.F.R. § 404.507; *Jefferson v. Bowen*, 794 F.2d 631, 633 (11th Cir. 1986).

The standard for district court review is whether there is substantial evidence "as a reasonable mind might accept as adequate" to support the Commissioner's decision. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).   Such evidence must be more than a "scintilla, but may be less than a preponderance."  *Cannon v. Bowen*, 858 F.2d 1541, 1544 (11th Cir. 1988).

If the ALJ applied incorrect law, or the decision fails to provide the district court with sufficient reasoning to determine whether the Commissioner properly applied the law, the Court has plenary review.  *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## III.  Analysis

From the documents filed with this Court and the testimony given during the administrative hearing, the Court is able to discern Plaintiff claims the Commissioner erred: (1) in assessing $29,364.60 in disability overpayments against him and his family from his 1993 disability determination; (2) in withholding $20,270.60 from his 2002 disability determination to offset the allegedly erroneous overpayment; (3) in finding Plaintiff and his wife were at fault in causing the allegedly erroneous overpayment; (4) in denying Plaintiff's requests for waivers of repayment of the allegedly erroneous overpayment; and (5) in continuing to award and issue disability benefit payments, only to direct the amounts be repaid to the SSA.  The Commissioner argues in his brief that the SSA inadvertently reinstated Plaintiff's disability status in 1998 and paid Plaintiff, his wife and his children "back benefits totaling $29,364.60" (D's Brief at 1).  The Commissioner states that "the issue on appeal is whether the ALJ's decision not to waive the original lump sum payments SSA inadvertently made to Plaintiff and his wife is supported by substantial evidence" (D's Brief, p.8, n.5).  The Court finds the Commissioner states the issue on appeal too narrowly and the Commissioner's argument ignores obvious flaws in the ALJ's decision.

The primary flaw with the ALJ's decision is his finding that an overpayment totaling $29,364.60 was made to Plaintiff and Plaintiff's dependents, when there is no documentation in the administrative record of monies totaling $29,364.60 purportedly paid out to Plaintiff and his dependents in error.  The Court is at a loss as to how the asserted overpayment of $29,364.60 was calculated.  Defendant's argument that the "SSA inadvertently reinstated [Plaintiff's] DIB and paid Plaintiff $22,626.60 in back benefits for the months September 1996 through February 1999 (D's Brief at 6) is unavailing.  There

is no document outlining monthly disability payments made to Plaintiff in error during this period of time.  The documents to which Defendant refers in his brief include the ALJ's decision itself, the waiver determinations from the SSA, and Plaintiff's letter to the Office of Disability and International Operations for Medicare Information (*compare* D's Brief at 6 *with* Tr. 12, 38, 40, 126).  As discussed further *infra*, these documents do not support the fact and amount of the asserted overpayment.[14]

Upon review of the underlying administrative record in this case, the Court quickly ascertained that Plaintiff has proceeded on a *pro se* basis from the date of the initial application through the current appeal to federal court.  Thus, it is clear the ALJ's duty  in this case rose to a special level to fully and fairly develop the record by ensuring that favorable as well as unfavorable facts and circumstances were elicited, because of the claimant's unrepresented status.  *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997); *Cowart v. Schweiker*, 662 F.2d. 731, 735-36 (11th Cir. 1981).  This special duty requires the ALJ to be "especially diligent" and to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Graham v. Apfel*, 129 F.3d at 1423 (internal citations omitted).  Here, the ALJ failed to meet that duty.

The transcript of the administrative hearing before ALJ Carstetter reveals the bulk of the hearing was devoted to sorting through and clarifying the information contained within a disorganized and incomplete record, which at that time contained exhibits one through twenty-five, and reviewing the evidence Plaintiff brought to the hearing (*see* Tr.

---

[14]As a matter of fact, the Court finds it incredible that the SSA is unable to assemble an administrative record complete with all documents it has generated regarding a particular claimant's disability case.  In this action, Plaintiff, rather than the SSA, has produced documents that originated with the SSA. *See, e.g.*, notes 8, 9, 11, *supra*.

186-215).  Plaintiff produced the evidence found in Exhibit 26 during the course of the hearing (*see* Tr. 212).  At the time of the hearing, the ALJ appeared to be unaware that in September 2004 the SSA had withheld more than $20,000 in disability benefits due to Plaintiff under Plaintiff's 2002 application to offset the claimed overpayment under Plaintiff's 1993 application (*see* Tr. 199-200).  Plaintiff's testimony on this subject refers to the September 25, 2004, letter from the Social Security Administration that explained  the money was used to recover the overpayment.  The letter is contained within Exhibit 14 of the record as an attachment to one of Plaintiff's letters sent to the SSA and entered into the case file before the hearing.  It appears that upon reviewing the letter the ALJ concluded, "This says all the overpayment recovered as far as I'm concerned" (Tr. 201). A bit later in the hearing the ALJ states, "The first step that you need is to show that there wasn't an overpayment.  I'm going to rule that.  They said you're paid off." (Tr. 205.)  The ALJ then attempts to recount Plaintiff's work history since 1993 and Plaintiff's history of disability payments received since 1993 (Tr. 207-211), the result of which is not discernable from the discussion contained within the hearing transcript.

While it appears the ALJ further developed the record after the hearing, in light of the present record which contains forty-one exhibits, that development unfortunately did not include substantial evidence of disability overpayments totaling $29,364.60.  Under 20 C.F.R. § 404.902(j), determination of an overpayment is a matter subject to administrative and judicial review.  When a claimant challenges the SSA's initial determination of the amount of an overpayment, the Commissioner must present reliable substantial evidence of the particular overpayments.  *McCarthy v. Apfel*, 221 F.3d 1119, 1126 (9th Cir. 2000).

14

The production of an initial determination letter is not sufficient for that purpose.  *Id.*  In the instant case, the initial determination letter is not even in the record.[15]  The burden of proof of the fact and amount of overpayments is on the Commissioner.  *Id.; Cannuni ex rel. Cannuni v. Schweiker*, 740 F.2d 260, 263 (3rd Cir. 1984); *United States v. Smith*, 482 F.2d 1120, 1124 (8th Cir.  1973).

Plaintiff in this case clearly contests the fact and amount of the asserted overpayment (Tr.  52, 191).  The ALJ's finding that the "claimant does not dispute whether an overpayment exists or the amount of overpayment" is plainly erroneous (*compare* Tr. 14 *with* Tr. 52, 191).  Thus, the analysis in this case begins with whether substantial evidence exists in the record to support the ALJ's finding that an overpayment totaling $29,364.60  was made to Plaintiff and his dependants (Tr. 16).  The Court finds such substantial evidence is not present in the current record.  In fact, the denials of Plaintiff and Plaintiff's wife's requests for waivers stand as only evidence that such an overpayment *may have* occurred (*see* Tr. 38-41).

Denial of a waiver of repayment of an alleged overpayment is not sufficient evidence to establish the fact or the amount an overpayment of disability benefits was actually made. *See McCarthy v. Apfel*, 221 F.3d at 1126.  Plaintiff and his wife have produced evidence to show no disability payments were received into their bank account during part of the relevant period (Tr. 81-92).  That evidence stands uncontradicted.  Conversely, the SSA

---

[15]The "initial determination letter" in *McCarthy* stated the total amount the SSA calculated had been overpaid to the plaintiff, and detailed the months and specific monthly amounts the plaintiff had received disability benefits when he should have received nothing.  *McCarthy v. Apfel*, 221 F.3d at 1125-26.  Whereas the Ninth Circuit found such evidence was insufficient to establish the amount of overpayments in *McCarthy*, *see id.*, the current case is lacking even this evidence in the record.

has not produced evidence to support the amount claimed or to even establish the months in which Plaintiff supposedly received disability payments while working at substantial gainful levels. Plaintiff and his wife claim he did not receive disability payments after he completed the trial work period afforded him by the Commissioner's Regulations (Tr. 191-93, 207-08). At a minimum, it is the Commissioner's burden to produce such evidence to support a claim of overpayment that a reasonable person would accept as true. *Richardson v. Perales*, 402 U.S. at 401. The Commissioner has failed to meet this burden. The ALJ failed to adequately develop the record to support finding a $29,364.60 overpayment was made.

While the record may very well contain substantial evidence to support a finding Plaintiff was overpaid $14,051.70, the lump sum deposited without explanation into Plaintiff's bank account on May 14, 1998, the ALJ did not make that finding. Instead, he found the Plaintiff was overpaid $22,626.60 and Plaintiff's wife was overpaid $6,738, which together amount to the asserted $29,364.60 overpayment. As noted above, substantial evidence simply does not exist in the record before the Court to support the ALJ's findings on the fact and amount of overpayment.

Moreover, there is evidence the Social Security Administration withheld disability benefits totaling $20,270.60 that were awarded on a 2002 DIB application and even advised Plaintiff that the withholding of that amount was used "to recover all of your overpayment" (Tr. 51). While the ALJ took notice of the underpayment from the 2002 disability award to offset the asserted overpayment from the 1993 disability award (Tr. 16), to confuse matters further it would now appear (as of April 27, 2009) that the SSA has

16

decided to actually issue to Plaintiff the previously withheld $20,270.60, only to demand the amount be refunded to the SSA within thirty (30) days or risk the consequences of losing current benefits he would normally have received from June 3, 2009 "until the overpayment has been fully recovered" (*see* Doc. #10 at 3-8).[16]   This matter has been involved in some level of dispute since 1998; in other words, more than a decade has lapsed without resolve of an issue that was created by the Social Security Administration with the electronic direct deposit of some money into the bank account of a disability beneficiary.   Yet, there is no document in the record evincing calculation and actual payments of the amount purportedly overpaid.   In the language of the *Cannuni* court, "surely someone in the bureaucracy could have taken the time to take a serious look at this case and cry, 'basta!' (enough)."   *Cannuni ex rel. Cannuni v. Schweiker*, 740 F.2d at 265.

Notwithstanding the lack of substantial evidence to support the ALJ's finding the fact and amount of an overpayment, other errors in the decision warrant this Court's consideration.   At one point in the decision, the ALJ notes that "Mrs. Mackey was held without fault in causing $6,738.00 auxiliary overpayment because she lived with her husband and was aware of his work activity above SGA" (Tr. 12).   This sentence appears to be internally inconsistent, and is certainly inconsistent with the finding "[t]he claimant and his wife were at fault in causing the overpayment amount" (Tr. 16).   Yet, at another point in the decision, the ALJ again stated Plaintiff's wife was without fault (*see* Tr. 15, "The

_____

[16]The Court does not rely on this information in reaching its determinations in this case.  The information is, however, found within the Court record of the case at Docket Entry No. 10.  Defendant did not object the filing of Plaintiff's "New Evidence" submitted to the Court on May 5, 2009 (Doc. #10).  Defendant's objection (*see* Doc. #29 at 16-17) to Plaintiff's Motion to Add Evidence (Doc. #25) was addressed by an earlier Order (Doc. #26).

17

Administrative Law Judge concurs with the reconsideration determination that Mrs. Mackey is also without fault."), only to later find "Billie Jo Mackey was at fault in causing the $6,738.00 overpayment of disability insurance payments made to her from the claimant's record for the time period from September 1996 through February 1999 [,] and that recovery of the overpayment cannot be waived" (Tr. 15).

The referenced time period is particularly troubling in light of the lack of evidence to support disability payments were made to Plaintiff and his dependents throughout 1997 and through May 13, 1998.  Furthermore, the Waiver Determinations issued by the hearing officer on March 10, 2001, reflected the money paid to the Plaintiff "**in 1998 was in error**" (Tr. 38) (emphasis added).

A number of the ALJ's other findings are also troubling to the Court.  For example, the ALJ found that "prior to receiving the lump sum back payments, the claimant failed to furnish information which he knew or should have known to be material; which affects his overall credibility" (Tr. 14).  However, as the ALJ's decision also reflects, Plaintiff completed the SSA's Report of Work Activity-Continuing Disability on June 30, 1994 (Tr. 98-101, Exh. 28), which included information on Plaintiff's work activity at that point in time, and Plaintiff completed the SSA's Work Activity Report-Employee on June 27, 1996 (Tr. 110-12, Exh. 31), which candidly reported work activity at substantial gainful levels that the SSA determined occurred as of June 1996 (*see* Tr. 119).  Social Security found Plaintiff's disability was in fact continuing after the June 1994 report (Tr. 105), and Social Security discontinued Plaintiff's benefits after expiration of a trial work period, which was ascertained in part from Plaintiff's June 1996 report (Tr. 107).  It appears Plaintiff furnished

18

the information that what requested of him, when it was requested.  Nothing in the record indicates Plaintiff was dilatory in responding to any request from Social Security.  Thus, it is a bit difficult to see what information Plaintiff failed to furnish that affects his overall credibility.

Even a cursory review of the statements the ALJ made at the hearing conflict with findings in his decision.  For example, the ALJ stated at the hearing,

> I see where you're going.  I think you all have a case.  I reiterate that.  I want to see all that, and put it together and if we need to get back, then we will.  Because you know your lives.  I don't, and we're talking about a long time of period here.  My job's not to say no.  It's to find out what the truth is and if it's in favor of you all, then I'm going to say ... I'm saying right now that it looks like it is in your favor.

(Tr. 214.)  Admittedly, the ALJ obtained additional information that he added to the record after the hearing.  Although it is curious as to why some of the post-hearing exhibits were not part of the record before the ALJ during the hearing, clearly much of the late obtained evidence was material and relevant to the case before him.  The ALJ did not clear up the confusion from the hearing in his decision, however.[17]  Instead, the ALJ chose to use

---

[17]Subsequent to the administrative hearing, but prior to the issuance of the ALJ's decision, the SSA determined in November 2005 that another overpayment of disability benefits had occurred in January 2005 (see Tr. 145-48).  It appears Plaintiff attempted to broach the catalyst for this matter during administrative hearing with a reference to a letter from the SSA that had just been received and pertained to $1,000 (Tr. 212-14).  On July 27, 2005, the SSA notified Plaintiff by letter that he would "receive a check for $1,039.20 because of a rate increase" (Tr. 169).  In a Request for Reconsideration of the alleged overpayment of the same amount in January 2005 (Tr. 167), and in evidence submitted to the Appeals Council for review of the ALJ's decision, Plaintiff presented bank statements for December 2004 through February 2005 to illustrate the lack of direct deposits from the government into his account (Tr. 170-73).  Plaintiff's un-refuted testimony reflects all disability benefit payments were directly deposited into his bank account.  Defendant argues Plaintiff received and "cashed" two checks for the month of January 2005 (D's Brief, p.15, n.9), yet offers no evidence of cashed checks.  Defendant's argument merely parrots the November 22, 2005 letter (Tr. 145).  On the facts of this case, the Court finds

evidence procured after the hearing to bolster a finding that "[d]espite repeated notices to the claimant regarding his responsibilities, the claimant blatantly disregards SSA rules" (Tr. 15).  Use of evidence obtained after a hearing without affording the claimant an opportunity to rebut the evidence may itself be grounds for reversal.  *See Demenech v. Secy of Dep't of Health & Human Servs.*, 913 F.2d 882  (11th Cir. 1990) (finding a claimant's due process rights were violated because he was not allowed to cross-examine a post-hearing physician who wrote a report upon which the ALJ relied in reaching his decision); *Leik v. Barnhart*, 296 F.Supp.2d 1345 (M.D. Fla. 2003) (finding the ALJ's reliance on post-hearing interrogatory responses without affording the claimant an opportunity for a supplemental hearing for some level of cross-examination required remand of the case).

The Court's exhaustive and independent review of this case reveals the record from the Social Security Administration is riddled with inconsistencies.  These inconsistencies, in conjunction with a decidedly lack of evidence of actual overpayments and errors in the ALJ's decision, preclude the Court from finding that substantial evidence supports the ALJ's decision.

## IV.  Conclusion

The Court finds there is not substantial evidence in the administrative record to support the ALJ's decision.  Indeed, there is no evidence in the file of how the overpayment was calculated or when it occurred.  Without that evidence, the Court has nothing to review as to the ALJ's conclusion that the Plaintiff and his wife are not without fault.  Thus, the

---

the SSA's November 22, 2005 notice letter is insufficient to establish the fact and amount of a $1,039.20 overpayment.  Upon remand, the Commissioner shall reconsider this asserted overpayment in light of the standards set forth in *McCarthy*, as discussed *supra*.

decision is not substantially supported by the record.  Although the Court's review is limited in scope, it is required to scrutinize the record to determine if substantial evidence exists to support the Commissioner's findings.  *Viehman v. Schweiker*, 679 F.2d 223, 227 (11th Cir. 1982).

For the reasons stated, the decision of the Commissioner is **REVERSED** and the case is **REMANDED** to the Commissioner for further proceedings, which shall include providing Plaintiff with information on when the alleged overpayment occurred and how the amount was calculated.  More specifically, upon remand the Commissioner is directed to reconstruct the alleged overpayment of benefits to Plaintiff and his dependants.  Such evidence shall include a month by month account of disability payments issued in error. A notice of overpayment, if any, then shall be entered into the administrative record and forwarded to Plaintiff for his review, along with instructions on how to request reconsideration.  Should the Commissioner still believe that Plaintiff was not without fault for any overpayment determined, Plaintiff shall be afforded the opportunity to request waiver.  The Court respectfully suggests the matter be remanded directly to the ALJ to develop the record, accept additional relevant evidence, and conduct further proceedings in accordance with this Order and Opinion.

The Court recognizes that the remand may not lead to a different result for Plaintiff. The Commissioner may be able to produce evidence showing a number of months in which Plaintiff was overpaid disability benefits while also working at substantially gainful levels.  The Commissioner may be able to produce evidence showing months in which Plaintiff's dependents received auxiliary payments on Plaintiff's disability record, when

those payments should not have been made because Plaintiff was employed at substantially gainful levels.   On a more thorough review of the facts of this case, the Commissioner may or may not determine Plaintiff and Plaintiff's wife were without fault in causing any overpayment.   Or, even if there is a subsequent finding that Mr. and Mrs. Mackey were not at fault, the Commissioner may still find either, or both, is not entitled to waiver.[18]   Either way, the Court does not find it necessary to rule at this time on whether there was substantial evidence to support the finding that Plaintiff was not entitled to waiver under 20 C.F.R. §§ 404.506 and 404.508.

## V.  Directions as to Judgment

The Clerk of Court is directed to enter judgment for the Plaintiff consistent with this Order and Opinion, and thereafter to close the file.

**DONE AND ORDERED** at Jacksonville, Florida this  28<u>th</u>  day of September, 2010.

_Thomas E. Morris_

**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to counsel of record

---

[18]The burden of proof on whether waiver should be granted is on the Plaintiff.

22